Booth, Chief Justice■,
delivered the opinion of the court:
The plaintiff, a resident of Chicago, Illinois, is engaged in the general contracting business. On June 13, 1922, the United States Veterans’ Bureau solicited bids for the remodeling of a portion of the tenth and all of the eleventh floor of the Butler Building in Chicago. On the above date the Veterans’ Bureau was occupying several floors of the Leiter Building and was to remove therefrom, after suitable repairs and changes to the Butler Building. The purpose of the proposals was to obtain a contract to make the essential repairs and changes in the Butler Building for the accommodation of the bureau. The plaintiff responded to the proposals and his bid was accepted, a written contract in accord therewith following. The contract contained the following express provisions:
“ Use of old material: All old material which is removed from the 7th floor of the Leiter Building that is suitable and complies with the requirements of the specifications and drawings shall be reused in the new quarters. All old material used shall be reinstalled in neat and workmanlike manner. New work in connection with the old work (unless otherwise specified or noted on drawings) shall be made to harmonize and correspond with the old vrork.
“All connections between new and old work must be as inconspicuous as possible; all patching of plaster or other material is to be done in a neat and workmanlike manner. The new work must be securely bonded to the old and any cutting of the present work must be done with care. No unnecessary cutting shall be done.
í[í ‡ ifr
“ Salvage material: The attention of the contractor is called to the partitions, doors, shelves, handrail, etc., used in the space on the 7th floor of the Leiter Building now occupied by the Government. All of this material will be salvaged by the Government and reused by this contractor in the new quarters in the Butler Building as far as same will reach.”
Prior to entering into the contract the plaintiff received a letter from the Veterans’ Bureau containing a detailed list of salvaged materials, i. e., from the Leiter Building. It is true this list embraces material from other floors than the *712 seventh, and it is likewise apparent that it is not initialed by the director. The letter, however, is written on the stationery of the bureau and corresponds in directions to the time limit for bids to do the work. The director does not expressly disavow the letter or its contents; he simply says “ that he didn’t know why on earth such a list should be given to us.” The plaintiff prior to submitting his bid visited the quarters of the bureau in the Leiter Building and carefully checked over and appraised the value of the available material and supplies in performing the proposed contract work. The Government officers made no attempt to deliver any portion of the salvaged material to the plaintiff. On the contrary, the plaintiff was compelled to request delivery, and upon so doing discovered that the entire lot had been deposited in a warehouse in the Army Supply Building at the foot of 39th Street, Chicago. This is not all; an inspection of the lot disclosed that most of the material had been removed with reckless abandon of its value for reuse. It was broken, twisted, and otherwise inexcusably injured and rendered unfit for use. Even the director of the bureau did not know where it was. As a matter of fact, not disputed, only a fractional portion of the material could be found in the warehouse.
As a result of this condition of affairs the contractor was enabled to use out of two or three truck loads sent to him salvaged material of the value of $472.00. To supply its place the contractor bought new material.
In making his bid, after the letter and personal inspection of the premises the contractor estimated the value of available salvaged material at $4,200, and allowed this sum in reaching the total consideration for which he agreed to do the work. Witnesses of experience and familiar with the work and conditions testify that the estimated loss to the contractor, due to failure to receive the salvaged materials, is most conservative; in fact, the amount claimed is firmly established as the minimum amount due.
The defendant’s objection to a right of recovery is placed upon a literal and precise construction of the wording of the contract, i. e., objecting to the letter and relying upon the *713 contract, it is insisted that the plaintiff was not entitled to any salvaged material except such as was saved from the seventh floor of the Leiter Building.
The court is not compelled to go counter to this contention. Its inherent weakness is the lack of testimony showing that the plaintiff received all or any part of the salvaged material from the seventh floor. What the defendant did was to intermingle the whole lot from all the floors. No attempt was made to segregate it. It was all stored at the Army Base Building, and instead of doing what the contract obligated the defendant to do, i. e., salvage the material in such a way as to permit the reuse of all possible portions, it was removed irrespective of a saving to the contractor or the Government.
Surely we need not cite authorities to sustain a proposition that the Government can not induce a contractor to enter into a contract to repair and remodel a building, under the express representation that the consideration for the work may be fixed upon the hypothesis of salvaged material capable of reuse, and adapted to the plans and specifications, and then disregard every phase of the obligation. Granting the efficacy of the defendant’s contention, and confining the case to the express letter of the contract, it is still incumbent upon the defendant to prove its compliance therewith, at least to meet the proven allegations of the plaintiff’s petition, and this the defendant did not do. Not a single witness was called by the defendant.
Judgment for $3,728.00. It is so ordered.
SiNNOtt, Judge; GeeeN, Judge; Moss, Judge; and Graham, Judge, concur.